UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ALAN W. ORTEGO, SR.                  CIVIL ACTION NO. 09-cv-0199

VERSUS                                       JUDGE HICKS

FORCHT WADE CORRECTIONAL       MAGISTRATE JUDGE HORNSBY
CENTER, ET AL

## REPORT AND RECOMMENDATION

### Introduction

Alan Ortego ("Plaintiff") is a state prisoner who was formerly housed at the Forcht Wade Correctional Center ("FWCC"). He filed this civil rights action based on allegations that a prison nurse wrongfully denied him his insulin and that, when Plaintiff complained, the director of nursing charged him with a false disciplinary report. Before the court is a Motion for Summary Judgment (Doc. 52) filed by Nurse Cheryl Wheeler and Nursing Director W. Colt Palmer. They argue that Plaintiff's complaint should be dismissed for failure to exhaust administrative remedies prior to filing suit.

### Relevant Facts

#### A. Allegations in Complaint

Defendants do not offer any summary judgment evidence to challenge Plaintiff's allegations of fact, so the court will review Plaintiff's allegations in his complaint (as amended) and compare them to the efforts he made to exhaust administrative remedies. Plaintiff alleges that he was on work duty at the time of pill call, at which he would have

received insulin for his diabetes. Plaintiff said he was running a few minutes late, so a sergeant he was working with contacted the nursing facility by phone to let the nurses know that Plaintiff was en route. Upon arrival, R.N. Cheryl Wheeler told Plaintiff that she was not going to give him his insulin, and she insisted that Plaintiff leave the pill call area.

Plaintiff alleges that he returned to his work post and informed two sergeants of the nurse's actions. The sergeants contacted Captain Hatter, who went to the nursing facility and spoke to Nurse Wheeler. The Captain informed Wheeler that he had personally brought Plaintiff by wheelchair to the nursing facility emergency room on the previous day because Plaintiff was suffering from a diabetic-related seizure. Nurse Wheeler nonetheless refused to provide insulin. Captain Hatter sought the assistance of Major Granttan, who spoke to Nurse Wheeler unsuccessfully in an effort to have her provide the insulin to Plaintiff.

Plaintiff alleges that he went to the next pill call, and a finger-stick test indicated that his blood-sugar level read high, so Medical Director Dr. Pamela Hearn was contacted. She ordered that Plaintiff be placed on an IV and given regular insulin until his blood-sugar level returned to a normal level.

Plaintiff later complained to a colonel about the incident, and the colonel told him that Deputy Warden Batson, who is in charge of FWCC, was aware of the issue and the problem was being addressed as they spoke. Deputy Warden Batson contacted Plaintiff later that day and told him he had taken care of the matter and that Plaintiff would not have any more problems with the medical staff.

Plaintiff alleges that when he went to pill call that afternoon, Nurse Wheeler told him that she would find a way to punish him for getting her in trouble. Plaintiff received his insulin and returned to his dorm to draft a grievance against Wheeler to file pursuant to the prison's administrative remedy procedure.

Plaintiff alleges that, after he filed the grievance, he was taken into an examination room with Nurse Wheeler and Director of Nursing Colt Palmer. Plaintiff alleges that Palmer told him to withdraw the grievance or Palmer would see to it that Plaintiff was written up for aggravated disobedience. Plaintiff refused to drop the grievance, and he informed other officers of the conversation. Plaintiff was served later that day with a disciplinary charge of aggravated disobedience.

The charge related to whether Plaintiff had appeared for pill call on a certain date and not signed required medical refusal forms. Plaintiff was found guilty before a disciplinary board. He said the nurses asked him that evening how court had gone. Plaintiff explained that he was found guilty because there were no signed refusals in his medical chart, and the nurses said Colonel Miller would have the forms on his desk the next day. Colonel Miller told Plaintiff the next day that the refusals had been provided and that they would be given to Deputy Warden Batson. Plaintiff filed an appeal to Warden Goodwin (who oversees both David Wade Correctional Center and FWCC) and Goodwin immediately granted the appeal. He wrote that additional information showed that the refusals had been signed by Plaintiff

on the dates in question, so the sanctions and disciplinary report would be expunged from Plaintiff's record.

### B. The ARP Grievance

The record contains evidence of only one grievance filed by Plaintiff related to these events. He filed on January 5, 2009 a grievance in which he complained that on December 27, 2008, he reported to the nursing facility at 10:45 a.m. to receive his diabetic medications and finger stick, but Nurse Wheeler and another nurse refused to provide the medications, even though they were told by two sergeants that Plaintiff had been working at visitation and could not be present at the 10:30 pill call. A copy of the grievance provided by Defendants with their motion shows only the first page, but there is no suggestion by Plaintiff that this grievance went beyond the scope of the complaint just described.

Plaintiff received a first-step response from defendant Palmer, who wrote that medical call-outs are "manditory" and that a job assignment does not excuse an inmate from being at the mandatory call-out at the specified time. Palmer continued that, on the day the nurses refused to give Plaintiff his medication, the nurses were finished with the insulin-dependent diabetic call-out when Plaintiff "decided" to pick up his medicine. Palmer added that Plaintiff was given the opportunity to file an emergency medical request for treatment, but Plaintiff declined to do so.

The first-step response included an instruction on how to continue the two-step administrative process. It provided as follows:

>Instructions to Inmate: If you are not satisfied with this response, you may go to Step Two by checking below and forwarding to the ARP Screening Officer in the manila envelope within 5 days of your receipt of this decision.
>
>( ) I am not satisfied with this response and wish to proceed to Step Two.
>
>Reason: _____
>
>_____
>
>_____          _____
>Date                    Inmate's signature DOC#

Plaintiff, one day after he received the step one response, wrote in the "Reason" area for proceeding to step two: "The reports about this issue was falsified." Plaintiff signed the form with his DOC number and dated it. He also wrote in the margin by Palmer's reasons for the step-one decision that the allegedly mandatory call-out was "Not mandatory until 1-7-09," which was after the incident at issue. (A copy of Plaintiff's step one response is attached hereto as Appendix A.) There is no evidence of a step-two decision.

**Analysis**

### A. Introduction

Plaintiff's complaint filed with this court focuses on two claims: (1) Nurse Wheeler denied him medication and (2) Director Palmer filed a false disciplinary charge against Plaintiff in retaliation for Plaintiff pursuing his administrative remedies. Defendants argue

Page 5 of 14

that both claims are subject to the defense that Plaintiff did not exhaust his available administrative remedies before he filed suit.

Congress has commanded that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The statute's reference to actions "with respect to prison conditions" is interpreted broadly and includes those actions that allege the denial of medical care, Harris v. Hegmann, 198 F.3d 153 (5th Cir. 1999), or the retaliatory filing of false disciplinary charges. Richardson v. Spurlock, 260 F.3d 495, 499 (5th Cir. 2001).

**B. Retaliation Claim**

Defendants' argument regarding the retaliation claim is supported by an affidavit from Beth Florentine, who testifies that her duties include processing the initial grievances submitted by prisoners at FWCC. She testifies that she has reviewed the database and complete ARP file for Plaintiff, and she attests that Plaintiff "did not file an initial grievance alleging any threats or coercion by the Director of Nursing, W. Colt Palmer, which is alleged to have occurred on or about January 1, 2009."

There is some uncertainty as to how a Louisiana prisoner should properly exhaust a claim of a retaliatory disciplinary charge. The Fifth Circuit said in Richardson, 260 F.3d at 499, that a Louisiana prisoner failed to exhaust his administrative remedies on a claim of a

retaliatory, false disciplinary report. The Court said that the inmate "had to file a disciplinary appeal because this involved an allegedly false disciplinary report." Because the prisoner "incorrectly filed an administrative appeal instead of a disciplinary appeal," his claim was dismissed. Id. But this court has seen at least one case where state prison officials urged that a disciplinary appeal was not equivalent to the exhaustion of administrative remedies for a claim of retaliation. They argued that the prisoner had to pursue his disciplinary appeal *and* exhaust a grievance through the prison's ARP procedure (though they did not say when the ARP grievance should be filed so as to avoid (1) denial of the grievance based on untimeliness if it is not filed until after the disciplinary appeal is complete or (2) rejection of the grievance on the grounds that it raises a disciplinary matter if the grievance is filed before the disciplinary appeal is complete). See Samuels v. Hammond, 02-cv-2395, Doc. 84. The current situation begs for a clarification in the DOC procedures as to how an inmate should properly exhaust a claim of a retaliatory disciplinary charge.

Plaintiff did pursue an appeal of his disciplinary conviction. Despite the summary judgment challenge regarding exhaustion, Plaintiff has not pointed to any evidence that his appeal included an argument that Palmer's charge was retaliatory in nature. It does not appear that Plaintiff's filing that resulted in Warden Goodwin setting aside the conviction is in the court record. Accordingly, we have direct and unchallenged evidence that Plaintiff did not file an ARP grievance regarding the retaliation claim, and we have an assertion from Defendants that Plaintiff did not exhaust his administrative remedies on the claim. It was

then incumbent upon Plaintiff to come forward with competent summary judgment evidence that he did exhaust the retaliation claim through the disciplinary appeal or other avenue, and he has not presented any such evidence. Accordingly, the retaliation claim should be dismissed.

### C. Medical Care

Plaintiff undeniably filed a step-one grievance regarding the alleged denial of medical care by Nurse Wheeler. He received a step-one response, and it appears from the evidence of record that Plaintiff timely drafted a response in which he challenged the step-one reasons. Plaintiff did not, however, place a checkmark between the two parenthesis where he was to indicate his lack of satisfaction with the response and a desire to proceed to step two.

Defendants never say so directly, but it appears that they take the position there was no step-two filing simply because Plaintiff did not put a checkmark between two parentheses on the form. Paralegal Rhonda Weldon testifies that the pages of the ARP documents submitted with the motion for summary judgment are true and correct copies. She states that Plaintiff's grievance about his medical care was denied at the first step, and "Plaintiff to this matter has failed to exhaust the Administrative Remedy Procedure prior to filing this lawsuit regarding certain allegations contained in the above-captioned case." Weldon does not deny that Plaintiff timely tendered his step-two submission, and she does not explain the basis for her conclusory assertion that Plaintiff failed to exhaust.

Deputy Warden Batson testifies that Plaintiff filed a grievance against Nurse Wheeler, and the grievance was denied at the first step. Batson says nothing about the second step, but he does testify: "At no time prior to the filing [of] this lawsuit did inmate Ortego submit the necessary forms to initiate the second step of the administrative remedy procedure concerning the claims asserted in The Grievance. Batson does not elaborate on why Plaintiff's step-two submission did not constitute the "necessary forms." He merely makes supporting reference to the conclusory affidavit of Rhonda Weldon. The affidavit of Beth Florentine does not discuss the grievance against Wheeler.

Accordingly, the court is faced with a record that indicates Plaintiff took the steps necessary to proceed to the second and final step of the grievance process, except that Plaintiff neglected to place a checkmark on the form. Defendants made the conclusory statement that Plaintiff did not exhaust because he did not submit the necessary forms to initiate the second step, but they never deny receipt of the second-step filing or say specifically what it is about the form that they found lacking. The undersigned can only assume it is the lack of a checkmark. Parties should never leave the court in a position of having to guess the basis of their arguments, because the court may guess wrong and rule against them. Rather, parties should be clear and candid about the positions they take on a motion. If the undersigned is somehow mistaken about Defendants' position with regard to this issue, Defendants have only themselves to blame for their failure to articulate clearly the factual and legal basis for their defense.

The statutory exhaustion requirement requires "proper exhaustion" in accordance with the prison system's procedural rules. Woodford v. Ngo, 126 S.Ct. 2378 (2006). The Court explained that an administrative exhaustion requirement gives an agency or prison an opportunity to correct its own mistakes with respect to the programs it administers before it is called into federal court. The exhaustion requirement also promotes efficiency by allowing claims to be resolved more quickly and economically before the agency rather than in litigation in federal court. Woodford, 126 S.Ct. at 2385. The exhaustion doctrine is designed to "deal with parties who do not want to exhaust," by creating an incentive for them to "give the agency a fair and full opportunity to adjudicate their claims." Id.

The Woodford court held that an inmate who did not timely pursue his administrative claim had not properly exhausted. The Fifth Circuit has similarly held that arguments of "substantial compliance" do not excuse the mere filing of a step-one grievance that is not pursued further under the available procedure. Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).

Defendants have not cited any authority in which a final-step grievance was filed but included some minor, technical mistake and was held to forever bar the underlying federal claim. Defendants mention in their memorandum that Plaintiff did not place a checkmark on the form, but they do not specifically deny receipt of the form and its articulated reasons for challenging the step-one response.

<u>Woodford</u> explained that proper exhaustion demands compliance "with an agency's deadlines and other critical procedural rules" because an administrative system must have an orderly structure. <u>Woodford</u>, 126 S.Ct. at 2386. There is no evidence or reasonable basis for assumption that the presence of a checkmark on an inmate form that otherwise clearly indicates an intent to appeal and the basis for the appeal is a violation of a "critical procedural rule" of the Louisiana prisoner grievance system. Those rules allow an inmate to commence a grievance by a simple letter, and state that "inmates shall receive reasonable responses and where appropriate, meaningful remedies." They provide that an inmate who is dissatisfied with the first-step response may appeal to the Secretary "by so indicating that he is not satisfied in the appropriate space on the response form and forwarding it to the ARP screening officer within 5 days of receipt of the (first step) decision." Louisiana Administrative Code at Title 22, Part I, § 325. Plaintiff did indicate his dissatisfaction in an appropriate space on the response form (see Appendix A), and there is no direct challenge that he did not timely forward the claim to the screening officer.

The exhaustion doctrine is not served by employing traps to defeat an inmate's claim, especially when the inmate (many of whom are barely literate or illiterate) is not attempting to avoid the administrative procedure. Here, it is the inmate who is attempting to follow the administrative procedure, and it is the agency for whom the procedure was intended to benefit that is attempting to avoid it.

The dissent in Woodford predicted that prison officials would try to take advantage of the decision by devising or taking advantage of procedural requirements in an effort to trap unwary prisoners and defeat their claims, but the majority deemed such concerns too speculative to address in the decision. The majority stated that corrections officials who are truly concerned about maintaining order in their institutions have a reason to create and retain grievance systems that provide a meaningful opportunity for prisoners to raise meritorious grievances that the prison officials might address before a lawsuit is filed.

The circumstances in this case seem to fall squarely within the concerns of the Woodford dissent. Louisiana prison officials have attempted to take advantage of a procedural technicality – a missing checkmark – committed by an inmate who was diligently trying to resolve a grievance in the administrative system. Here, the inmate clearly expressed his dissatisfaction in his own words in the margins and on the blank lines of the preprinted form.

In this setting, the undersigned finds that Plaintiff did file a step-two grievance. The Secretary then had 45 days to respond. The lack of a timely response by the Secretary deems the claim exhausted. Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1999). Accordingly, the motion for summary judgment should be denied with respect to this claim.

**FWCC and Deputy Warden Batson**

Plaintiff named as a defendant FWCC, but that prison facility is not a legal entity capable of being sued. See Beyard v. Caddo Parish Commission, 2007 WL 1741970, *5

(W.D. La. 2007) (FWCC is not a legal entity capable of being sued); Robertson v. Detention Center Claiborne Parish, 2009 WL 3241561, *1 (W.D. La. 2009) ("It is well established that a detention center is not a legal entity capable of being sued.")

Plaintiff has also named Deputy Warden Batson as a defendant, but there are no allegations that Batson personally committed any acts related to the denial of medication, which is the only properly exhausted claim. The doctrine of respondeat superior does not apply in cases brought under 42 U.S.C. § 1983, so Batson cannot be liable based solely on his supervisory position. See Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987). All claims against Batson and FWCC should be dismissed.

Accordingly,

**IT IS RECOMMENDED** that the **Motion for Summary Judgment (Doc. 52)** be **granted in part** by dismissing all claims against W. Colt Palmer and **denied** in all other respects, so that Plaintiff has remaining a medical indifference claim against Nurse Cheryl Wheeler.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims against Forcht Wade Correctional Center and Deputy Warden Anthony Batson be **dismissed** for failure to state a claim upon which relief may be granted.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and

recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 29th day of April, 2010.

Mark L. Hornsby, U.S. Magistrate Judge

## Appendix A to Report and Recommendation

ORM 10/12/2009

CASE NUMBER: FWADE-2009-5

FIRST STEP RESPONSE FORM (FIRST STEP RESPONDENT)

TO: ORTEGO, ALAN 323261

BRAVO 2
Living Quarters

*Not mandatory*
*1-7-09*

Response to request dated , received in this office on 01/05/2009

We schedule call-outs all during the day, everything we do has a time slot because there is so much to be done. Medical call-outs are manditory and your job assignment does not excuse you from being at a manditory medical call-out at the specified time. On December 27th 2008 when you allege that we refused to give you your medication, the nurses were finished with the insulin dependant diabetic call-out when you decided to pick up your medicine. You were not refused medication, you did not show up at the proper time to get it. You were given the opportunity to file an emergency medical request for treatment but you declined to do so.

W. Colt Palmer RN/DON

Prepared by: _____

1-29-09
Date

_____
Unit Head

Instructions to Inmate: If you are not satisfied with this response, you may go to Step Two by checking below and forwarding to the ARP Screening Officer in the manila envelope within 5 days of your receipt of this decision.

( ) I am not satisfied with this response and wish to proceed to Step Two.

Reason: The reports about this issue was falsoficd.

1-30-09
Date

323261
Inmate's Signature   DOC#


ATTACHMENT A-7